■ In the Matter of THOMAS O'BRIEN, Appellant, v STATE OF NEW YORK DIVISION OF PROBATION AND CORRECTIONAL SERVICES, Respondent. [693 NYS2d 735] —Carpinello, J. Appeal from a judgment of the Supreme Court (Kane, J.), entered October 1, 1997 in Albany County, which dismissed petitioner's application, in a proceeding pursuant to CPLR article 78, to review a determination of respondent classifying petitioner as a risk level three sex offender pursuant to the Sex Offender Registration Act.

Petitioner has been diagnosed as a homosexual pedophile and has been convicted on four occasions between December 1988 and April 1991 relative to his unlawful contact with children. His most recent conviction of sexual abuse in the first degree, based on allegations that he had sexual contact with a nine-year-old boy, resulted in a sentence of six months in jail and five years' probation. In July 1995, the Legislature passed the Sex Offender Registration Act (L 1995, ch 192), also known as Megan's Law, which implements a registration and notification system for individuals convicted of certain sex offenses based on a three-tier classification system.[1] Having been convicted and having achieved probation status before January 21, 1996, the effective date of Megan's Law (L 1995, ch 192, § 3), respondent evaluated petitioner (*see*, Correction Law § 168-g [1]) and classified him as a level three offender. In making this classification, respondent utilized the "Sex Offender Registration Act Risk Assessment Instrument" (hereinafter the Risk Assessment Instrument) and the "Risk Assessment Guidelines and Commentary" (hereinafter the Guidelines), promulgated by the Board of Examiners of Sex Offenders pursuant to Correction Law § 168-l. Although petitioner received a score of 105 points, thereby ostensibly placing him within the level two classification, he was classified as a level three offender because he had been diagnosed in 1989 as a

_____

1. An offender's risk category is dictated by the number of points "scored". Thus, a total score of 70 points or less results in a classification as a level one sex offender, subject to minimal registration and notification requirements; a score of between 70 and 110 results in a classification as a level two sex offender, subject to more significant notification requirements to "vulnerable" populations; a score of 110 points or more results in a classification as a level three sexually violent predator, subject to stringent registration requirements and widespread publication of the person's identity, potentially for life (*see*, Correction Law § 168-a [7]; §§ 168-h, 168-l [6] [a], [b], [c]; §§ 168-q, 168-t).

homosexual pedophile and because he had a history of two prior instances of sexual misconduct which were not adequately accounted for in the initial calculation.

Upon being notified of this classification, petitioner filed a written appeal with respondent. Citing "no further indications of risk" since his most recent conviction and his status as a married man, father and "normal citizen within the community", petitioner argued that his risk level assessment should be reduced to a level two. His appeal was denied after respondent's administrative reviewers, who were unfamiliar with the original assessment and independently reviewed petitioner's file, each concluded that petitioner should be assessed as a level three sex offender even though his total risk factor score placed him within level two. Notably, the Risk Assessment Instrument completed upon administrative appeal does not refer to petitioner's past diagnosis as a homosexual pedophile as a basis for this determination. However, it does note that a departure from a risk level of two was warranted because petitioner's "prior and contemporaneous history of endangering the welfare of a child indicates [he] is a higher risk to the community".[2]

Following respondent's denial of his appeal, petitioner opted to commence the instant CPLR article 78 proceeding challenging the assessment as arbitrary and capricious (*but see*, Correction Law § 168-g [4]; § 168-o). In his petition, petitioner's sole contention was that the level three risk designation was arbitrary and capricious and that level two was more appropriately warranted in his case. No other claim was raised. Supreme Court, finding that respondent's classification was not arbitrary or capricious, dismissed the petition. Petitioner appeals.

Having raised no due process or procedural challenge at the administrative level or in his petition, the only issue properly before this court is whether respondent's determination of petitioner's appeal was arbitrary and capricious (*see*, *Matter of Delson v Regan*, 190 AD2d 984; *Matter of Alcott Staff Leasing v New York Compensation Ins. Rating Bd.*, 224 AD2d 54; *see generally*, *People v Lyday*, 241 AD2d 950). Under the Guidelines, respondent is permitted to depart from a presumptive risk level calculated after consideration of the indicated factors when "there exists an aggravating or mitigating factor of a

---

2. In its determination denying petitioner's appeal, respondent indicated that the Risk Assessment Instrument was used to determine his risk level and specifically referred petitioner to this document and the scores calculated therein.

kind, or to a degree, not otherwise adequately taken into account by the guidelines" (Risk Assessment Guidelines and Commentary, Commentary A [6], at 4 [1996 ed]). Here, petitioner's prior conviction for endangering the welfare of a child, which was not otherwise taken into consideration on the Risk Assessment Instrument, caused respondent to determine that an "upward departure" was warranted. We are unable to conclude that such determination was irrational, arbitrary or capricious (*see,* CPLR 7803 [3]; *see also, Matter of Young v Division of Probation & Correctional Alternatives,* 175 Misc 2d 51, 54; *People v Salaam,* 174 Misc 2d 726, 734, n 3).

Indeed, the record reflects that petitioner's criminal history includes a December 1988 conviction for endangering the welfare of a child (he was originally charged with sexual abuse in the first degree); a September 1989 conviction for disorderly conduct (he was originally charged with unlawfully dealing with a child); an October 1990 conviction for endangering the welfare of child (he was originally charged with sexual abuse in the first degree and endangering the welfare of a child); the April 1991 conviction for sexual abuse in the first degree (he was originally charged with this crime and endangering the welfare of a child); and a March 1991 conviction for criminal trespass in the third degree. Although petitioner received a 30-point assessment for his 1988 conviction of endangering the welfare of a child on the Risk Assessment Instrument, no additional points were assessed for the same conviction in October 1990. The Risk Assessment Instrument does not permit a multiplication of scoring in the category of "prior violent felony or misdemeanor sex crime or endangering the welfare of a child" to account for more than one of any of these crimes. Given the language in the Guidelines permitting a departure, the determination to do so because of petitioner's "prior and contemporaneous history of endangering the welfare of a child" was not irrational.

Although not essential to our holding, we note that a presumptive risk assessment of level three automatically results when one of four specified "overriding factors" is present, one of which includes a diagnosis of suffering from a chronic inability to control impulsive sexual behavior, such as petitioner's pedophilia (*see,* Risk Assessment Guidelines and Commentary, Commentary A [4], at 3-4, at 17; Guidelines V [1996 ed]). It is well-settled law, however, that judicial review of an administrative determination is limited to the grounds invoked by the agency (*see, e.g., Matter of Scanlon v Buffalo Pub. School Sys.,* 90 NY2d 662, 678; *Matter of Scherbyn v*

*Wayne-Finger Lakes Bd. of Coop. Educ. Servs.*, 77 NY2d 753, 758). Here, although one of these overrides was apparently present, and was noted on respondent's original determination, respondent did not invoke this override in its final determination. Thus, we cannot consider this ground in evaluating the rationality of the latter determination which is the subject of the proceeding at hand.

Mercure, J. P., Peters, Spain and Graffeo, JJ., concur. Ordered that the judgment is affirmed, without costs.